**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**COLUMBIA  DIVISION**

| | | |
|---|---|---|
| Charles Johnson and Randy Watson Holdings, LLC, | ) | Civil Action No.: 3:19-cv-01129-JMC |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **ORDER AND OPINION** |
| | ) | |
| Reginal Barner, The Barner Group, LLC, | ) | |
| MNK Holdings, LLC, and Michelle Koch, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the court on Defendants MNK Holdings, LLC ("MNK") and Michelle Koch's (together "Koch Defendants") Motion to Dismiss all causes of action listed in the Second Amended Complaint (ECF No. 32) of Plaintiffs Charles Johnson ("Johnson") and Randy Watson Holdings, LLC ("RWH"), (together "Plaintiffs"), pursuant to Rule 12(b) of the Federal Rules of Civil Procedure.[1]  (ECF No. 34.) For the reasons that follow, the court **DENIES** Koch Defendants' Motion to Dismiss. (*Id.*)

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Johnson is a former professional football player who has conducted "business ventures" through RWH, Johnson's limited liability company. (ECF No. 32 at 1 ¶ 2, 2 ¶ 14.) Plaintiffs allege that Johnson had a financial advisor named Paul Koch,[2] who "came up with numerous business

---

[1] Koch Defendants submit their motion as a Motion to Dismiss Or, In the Alternative, for Summary Judgment. In reviewing the merits of Koch Defendants' Motion, the court considered the Complaint and only those additional documents that the court determined are properly considered at the Rule 12 stage of the proceeding. The court rules on the instant Motion as a motion to dismiss for failure to state a claim, and does not convert it to a motion for summary judgment. *See* Fed. R. Civ. P. 12(d).

[2] Paul Koch is not a party in this case. Defendant Michelle Koch is Paul Koch's wife and Plaintiffs allege that she conducts her business through MNK. (ECF No. 32 at 3 ¶ 16.)

ventures in which t[o] invest[] Plaintiffs' monies."[3] (*Id.* at 3 ¶¶ 16, 17.) Plaintiffs allege that Paul

Koch invested their money into various businesses ranging from janitorial services to secondhand

clothing stores. (ECF No. 32 at 3 ¶ 17.) Plaintiffs further allege that these businesses were carried

out through several entities ("hereafter referred to as Ventures").[4] These Ventures were allegedly

created during the years 2013 to 2015. (*Id.* at 3 ¶ 19–4 ¶ 28.) As to the allegations supporting their

claims, Plaintiffs allege that Koch Defendants used Plaintiffs' assets to fund the Ventures, create

for themselves an ownership interest without any financial investment on their part, and provide

themselves with improper monetary distributions. (*Id.* at 5 ¶¶ 37–41.)

As a result, on April 17, 2019, Plaintiffs filed a Complaint (ECF No. 1) against Koch

Defendants alleging claims for breach of fiduciary duty, negligence, and conversion. Thereafter,

on June 21, 2019, Plaintiffs filed an Amended Complaint, which alleged the same claims but added

Defendants Reginal Barner and The Barner Group, LLC ("TBG") as Defendants.[5] On July 12,

2019, Koch Defendants filed a Motion for More Definite Statement, alleging that the Complaint

was "too vague" to answer, which the court granted on February 21, 2020. (ECF Nos. 12, 30.)

Thereafter, Plaintiffs filed their Second Amended Complaint on March 3, 2020, adding new

information to their allegations. (*See* ECF No. 32.)

Koch Defendants filed the instant Motion to Dismiss on March 17, 2020. (ECF No. 34.)

Plaintiffs filed their Response in Opposition to the Motion to Dismiss, on March 31, 2020. (ECF

No. 37.) On April 7, 2020, Koch Defendants filed a Reply to the opposition brief. (ECF No. 41.)

---

[3] In their response brief, Plaintiffs assert that Johnson hired Paul Koch while he was still playing professional football.  (ECF No. 37 at 4.)

[4] Chamire Holdings, LLC; CMR Partners, LLC; JKB Holdings, LLC; MPX 360, LLC; My-T-Sharp Holdings, LLC; Perrymanco, Inc.; VRE, II, LLC; VRE, III, LLC; Warren Mill, LLC; and Renaissance at Rock Hill, LLC. (ECF No. 32 at 3 ¶ 17.)

[5] Barner "is a relative of the mother of [] Johnson's child." (ECF No. 32 at 3 ¶ 15.) Barner controls TBG.

## II.    JURISDICTION

The court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the parties are citizens of different states and the amount in controversy exceeds $75,000,00, exclusive of interest and costs. For jurisdictional purposes, Plaintiffs allege that RWH is a limited liability company organized under the laws of the State of North Carolina with its principal place of business in Charlotte, North Carolina and its sole-member, Johnson, is a citizen of North Carolina. (ECF No. 32 at 1 ¶ 1.) Plaintiffs further allege that TBG is a corporation organized under the laws of the State of South Carolina and its sole member, Barner, is a citizen of South Carolina. (*Id*. ¶¶ 4, 5.) Plaintiffs also allege that MNK is a corporation organized under the laws of the State of Minnesota and its sole member, Michelle Koch, is a citizen of Minnesota. (*Id*. ¶¶ 6, 7.) The court is satisfied that the amount in controversy exceeds $75,000.00, exclusive of interest and costs. (*Id*. at 2 ¶ 13.)

## III.    LEGAL STANDARD

"A motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted is a challenge to the legal sufficiency of a complaint, as governed by Rule 8." *Fed. Trade Comm'n v. Innovative Mktg.,* 654 F. Supp. 2d 378, 384 (D. Md. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). Thus, "[i]n ruling on a 12(b)(6) motion, a court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty., Md.,* 684 F.3d 462, 467 (4th Cir. 2012) (internal quotations omitted). Furthermore, "a court may consider documents attached to the complaint or the motion to dismiss

so long as they are integral to the complaint and authentic." *Id.* Under the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see also Republican Party of N.C. v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.").

## IV.    DISCUSSION

Koch Defendants seek dismissal of all counts of Plaintiffs' Second Amended Complaint. (ECF No. 34.) In their Memorandum in support of their Motion,  Koch Defendants argue that Plaintiffs' Second Amended Complaint should be dismissed because (1) Johnson's claims are derivative in nature; (2) Plaintiffs' claims against MNK are barred by a "Mutual Release" executed between parties; (3) they did not breach any negligence standard of care; (4) they did not breach any fiduciary duty to Plaintiffs; (5) they did not engage in actionable conversions; and (6) FINRA Arbitration Rules expressly limit claims in this forum. (ECF No. 34-1.)

## 1.    <u>Documents Considered</u>

Before turning to the parties' arguments regarding the Motion to Dismiss, the court preliminarily must determine what extrinsic documents appropriately may be considered in its Rule 12(b) assessment. Koch Defendants have attached three (3) exhibits to their Motion to Dismiss: (1) Plaintiffs' Second Amended Complaint (ECF No. 34-2); (2) Michelle Koch's Affidavit (ECF No. 34-3); and (3) the December 31, 2017 Redemption Agreement between Chamire and MNK (ECF No. 34-4).

Courts "generally do not consider extrinsic evidence when evaluating the sufficiency of a complaint" in a Rule 12(b)(6) motion to dismiss. *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014). A court's consideration of extrinsic documents in deciding a Rule

12(b)(6) motion converts the motion into one for summary judgment. *See* Fed. R. Civ. P. 12(d); *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011). Such conversion is inappropriate when the parties lack sufficient notice and a reasonable opportunity for discovery. *See Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015); *Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt.*, 721 F.3d 264, 281 (4th Cir. 2013) (en banc).

However, there are exceptions to the general rule. For instance, the court "may properly take judicial notice of matters of public record" in deciding a Rule 12(b)(6) motion without converting it into a summary judgment motion. *Phillips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Hall v. Virginia*, 385 F.3d 421, 424 (4th Cir. 2004)); *see Papasan v. Allain*, 478 U.S. 265, 268 n.1 (1986) ("Although this case comes to us on a motion to dismiss under [Rule 12(b)(6)], we are not precluded in our review of the complaint from taking notice of items in the public record."). The court also "may properly consider documents attached to a complaint . . . 'so long as they are integral to the complaint and authentic.'" *Anand*, 754 F.3d at 198 (quoting *Phillips*, 572 F.3d at 180). Thus, the court may consider documents that are "integral to the complaint." *Zak*, 780 F.3d at 606-07. The Fourth Circuit has explained that a court may properly consider a concededly authentic document upon which the complaint is based when the defendant attaches such a document to its motion to dismiss . . . [o]therwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document.

The Fourth Circuit has not definitively set forth a standard for deciding when a document attached to a motion to dismiss should be considered "integral" to a complaint. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016). In numerous cases, the U.S. District

Court for the District of Maryland has adopted what appears to be a higher standard than that suggested in *Goines*: "To be 'integral,' a document must be one 'that by its very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Royster v. Gahler*, 154 F. Supp. 3d 206, 227 (D. Md. 2015) (quoting *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011)) (emphasis added). Other courts within the Fourth Circuit, including this court, have employed this standard prior to the Fourth Circuit's recent opinion in *Goines*. *See Tinsley v. OneWest Bank, FSB*, 4 F. Supp. 3d 805, 819 (S.D. W. Va. 2014); *Tisdale v. Enter. Leasing Co.-Se., LLC*, No. 3:13-cv221-MU, 2013 WL 3227927, at *2 n.2 (W.D.N.C. June 25, 2013); *Mozingo v. Orkin, Inc.*, No. 4:10-cv-71, 2011 WL 845896, at *4 (E.D.N.C. Mar. 8, 2011); *Alexander v. City of Greensboro*, 762 F. Supp. 2d 764, 822 (M.D.N.C. 2011); *Hendrix Ins. Agency, Inc. v. Continental Cas. Co.*, No. 7:10-2141-HMH, 2010 WL 4608769, at *4 (D.S.C. Nov. 3, 2010); *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 806 (E.D. Va. 2007).

Here, Koch Defendants contend that because their Exhibit C ("Mutual Release") is "incorporated into the complaint by reference" and Plaintiffs use it and rely on it to form the Second Amended Complaint, the court should consider it for the purposes of the instant Motion. (ECF No. 34-1 at 10 n.5.) Koch Defendants note that the Mutual Release is contained in the Membership Interest Redemption Agreement ("Agreement") that is "specifically referenced in the Second Amended Complaint." (*Id*. at 9–10.) Defendants also note that the Mutual Release is binding on the parties by both the terms and the broad language; therefore, Plaintiffs' claims should be barred by the Agreement. (*Id*.) In response to the Motion, Plaintiffs argue that the document is "extrinsic evidence [and] inappropriate for consideration." (ECF No. 37 at 13.) Plaintiffs state that Defendants "rely on factual issues outside the information in [their] complaint." (*Id*. at 14.)

Upon its review, the court is persuaded that the December 31, 2017 Agreement is "integral to the complaint" because Plaintiffs' Second Amended Complaint relies on facts from the Agreement. However, as explained below, the court declines to make a finding as to the effect of the Mutual Release section of the Agreement on Plaintiffs' claims.

## 2.    **Derivative Claims**

Plaintiffs allege claims against Defendants for breach of fiduciary duty, negligence, and conversion. (ECF No. 1.) In Koch Defendants' Motion to Dismiss, they contend that claims alleged specifically by Johnson are derivative and not individual claims. (ECF No. 34-1 at 8.)

Koch Defendants assert that Johnson and RWH are referenced collectively in the Second Amended Complaint, but RWH is actually the proper party not Johnson. (ECF No. 34-1 at 8–10.) They state that the two Plaintiffs are not the same and, thus, the claims should not be brought together. (*Id*.) Koch Defendants rely on *Rivers v. Wachovia Corporation*, 665 F.3d 610 (4th Cir. 2011) to demonstrate their argument. (ECF No. 34-1 at 9.)

*Rivers* is a case decided by the United States Court of Appeals for the Fourth Circuit in which the individual plaintiff brought an action against former officers of a corporation asserting claims of fraud, breach of fiduciary duty, gross negligence, and violations of state securities law. *Rivers*, 665 F.3d at 613. In the *Rivers* case, the Court held that under either North Carolina or South Carolina law, individual shareholders may not sue corporate directors or officers directly for losses suffered by the corporation. *Rivers*, 665 F.3d at 614–15. Instead, shareholders may pursue claims as a derivative suit on behalf of the corporation, as a remedy for those situations where the management through fraud, neglect of duty or other cause declines to take the proper and necessary steps to assert the rights of the corporation. *Id*. at 615.

Koch Defendants argue that under South Carolina law, a breach of fiduciary duty must be

pursued through a derivative, not an individual action. (ECF No. 34-1 at 9.) Koch Defendants

assert that the right to bring a lawsuit for those alleged damages resides in the entity RWH, and

not through Johnson. (*Id*.)

Plaintiffs argue that Johnson sufficiently alleged injury to himself and RWH. (ECF No.

32.) They further proclaim that Koch Defendants' argument fails for several reasons. The first

reason they argue is that a "derivative action would be inappropriate in this case" because "the

damages are not the same across all members." (ECF No. 37 at 15.) Plaintiffs state that Johnson

can bring a "direct action" because his injuries were direct in nature. (*Id*.) Plaintiffs cite to the

following 2-prong test referenced in *Patterson v. Witter* to distinguish the claims from derivative

claims. (*Id*.)

> Specifically, to distinguish a derivative claim from a direct one, the court considers:
> (1) who suffered the alleged harm, the corporation or the suing stockholders,
> individually, and (2) who would receive the benefit of any recovery or other
> remedy, the corporation or the stockholders individually." 19 AM. Jur. 2d
> *Corporations* § 1923 (2015). Direct and derivative claims may be brought
> simultaneously. 19 Am. Jur. 2d *Corporations* § 1922 (2015). "When determining
> whether a claim is derivative or direct, some injuries affect both the corporation
> and the stockholders; if this dual aspect is present, a plaintiff can choose to sue
> individually." *Id*. (citing *Carsanaro v. Bloodhound Techs., Inc.*, 65 A.3d 618 (Del.
> Ch. 2013)); *see also Horizon House-Microwave, Inc. v. Bazzy*, 21 Mass. App. Ct.
> 190, 486 N.E.2d 70, 74 (1985) (observing a shareholder may pursue both direct and
> derivative claims in a single action).

*Patterson v. Witter*, 821 S.E.2d 677, 687 (S.C. 2018).

In the present case, Plaintiffs proclaim that "Paul Koch, Michelle Koch, and Reginal Barner

mislead and took advantage" of Johnson through his investments in the Ventures and they

benefited from the investments. (ECF No. 37 at 16.) Plaintiffs believe the above argument satisfies

the first *Patterson* prong. (*Id*.) Plaintiffs continue their argument by stating that Johnson "will

receive any remedy sought both directly and through his status as the sole member of RWH." (*Id*.)

They further assert that Johnson and RWH can bring direct actions against Defendants because

they directly caused harm to Johnson and RWH, and thus, the second *Patterson* prong is satisfied. (*Id.*)

After reviewing the parties' arguments, the court observes that the question of whether Johnson's claims are derivative is not so easily answered. The court acknowledges that Koch Defendants are correct that generally a shareholder does not have standing to sue in an individual capacity for injury to the corporation. As stated in *Rivers*, the proper remedy in such a situation is a "derivative action." 665 F.3d at 615. However, *Rivers* does not account for the exception when a shareholder seeks to enforce relief for the benefit of themselves, but not on behalf of the corporation. *See Fletcher Cyclopedia of the Law of Corporations* § 5939; *see e.g.*, *Smith v. Robbins & Meyers, Inc.*, No. 3-12-cv-281, 2020 WL 4705905, at *6 (S.D. Ohio 2014) (citing that a direct action is appropriate "if the complaining shareholder is injured in a way that is separate and distinct from an injury to the corporation" (quoting *Crosby v. Bean*, 548 N.E.2d 217, 219 (Ohio Sup. Ct. 1989)). Plaintiffs argue that Johnson's injuries are direct, and he is the only person that suffered from Defendants' misappropriations of funds. Thus, the court will have to analyze the totality of circumstances to determine whether the present claims are derivative or direct.

In evaluating whether a claim is derivative, a federal court must determine the adequacy of pleading under federal law, but also must determine the sufficiency of the pre-suit demand under the substantive law of the state of incorporation—here, South Carolina. *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 108–09 (1991). The formulation of the derivative-direct distinction has not been addressed in this court; however, the Supreme Court of South Carolina, which states South Carolina precedent, closely tracks injury in fact and redressability. Thus, the court follows the analysis of the South Carolina Supreme Court in *Patterson v. Witter* to determine the distinction.

The court in *Patterson*, states: "[T]o distinguish a derivative claim from a direct one, the court considers (1) who suffered the alleged harm, the corporation or the suing stockholders, individually, and (2) who would receive the benefit of any recovery or other remedy, the corporation or the stockholders individually." 19 Am. Jur.2d *Corporations* § 1923 (2015).

Here, Johnson and RWH both allege harm. Johnson is suing individually and RWH is suing on behalf of the corporation. The court determines that Johnson and RWH would both benefit from recovery. At first glance, it seems that RWH's claims are derivative in nature because the claim is being brought on behalf of the corporation; however, Johnson's claims are direct. Therefore, the court looks to *Patterson* for further guidance on direct and derivative claims. The South Carolina Supreme Court states that "direct and derivative claims may be brought simultaneously." *Patterson*, 821 S.E.2d at 223. The court further concludes that if some injuries affect both the corporation and the stockholder, then a plaintiff can choose to sue individually. *Id.*; *see also Horizon House-Microwave, Inc. v. Bazzy*, 486 N.E.2d 70, 74 (Mass. App. Ct. 1985) (observing a shareholder may pursue both direct and derivative claims in a single action). Thus, the court disagrees with Koch Defendants' argument that Johnson cannot bring claims in the present case. Plaintiffs sufficiently allege that both Johnson and RWH were injured independently and collectively by Defendants. Discovery has not been conducted, therefore, the court is not inclined to dismiss the case at this time.

**3.**    **<u>Mutual Release</u>**

In Koch Defendants' Motion to Dismiss, they contend that RWH waived the claims asserted in the Second Amended Complaint when it entered into the Mutual Release with MNK, Chamire, and TBG. (ECF No. 34-1 at 9–10 (citing Ex. C.)) Koch Defendants contend the parties intended to release all claims arising out of or relating to the claims in this lawsuit. (*Id.*) Koch

Defendants assert that Plaintiffs' claims are barred by the Release because the claims arise prior to the December 2017 "Closing." (*Id.*) Koch Defendants rely on the "Closing" date of December 31, 2017, which is the date the Agreement was signed. Plaintiffs, however, contend that the court should not consider the Release because "release" is an affirmative defense and inappropriate for consideration at the Rule 12(b) stage. (ECF No. 37 at 18–19.) Further, Plaintiffs dispute the validity and scope of the Agreement and Release related to the Ventures. (*Id.*)

In determining whether a release is valid, the court must look to the totality of the circumstances surrounding its execution and consider a number of factors, including but not limited to: (1) the clarity and specificity of the release language; (2) the plaintiff's education and business experience; (3) the amount of time the plaintiff had for deliberation about the release before signing the release; (4) whether the plaintiff knew or should have known his right upon execution of the release; (5) whether the plaintiff was encouraged to seek, or in fact received, benefit of counsel; (6) whether there was opportunity for negotiation of the terms of the release; and (7) whether the consideration given in exchange for the waiver and accepted by the plaintiff exceeds the benefits to which the plaintiff was already entitled by law or contract. *Torres v. Pub. Serv. Co. of New Mexico*, 908 F.2d 687, 689–90 (1st Cir. 1990); *see also Scoggins v. Honeywell Intern., Inc.*, CA No. 2:11-3028-PMD-BM, 2012 WL 6102067, at *2–6 (D.S.C. Nov. 8, 2012). The totality of circumstances test does not require that every element be met; rather, it only requires that after considering the totality of the circumstances, Plaintiffs' waiver can be characterized as knowing and voluntary. *Melanson v. Browning-Ferris Indus., Inc.*, 281 F.3d 272, 276 (1st Cir. 2002).

In order for the court to determine the validity of the release, the court would have to consider all materials outside of the pleadings and the court declines to do so at this time. As the

court cannot determine the proper scope of the release, the court denies Koch Defendants' Motion to Dismiss based upon the Mutual Release.

**4.      Claim for Negligence**

Koch Defendants move to dismiss Plaintiffs' claim against them for negligence because their standard of care is limited by statute, S.C. Code Ann. § 33-44-409(c) (West 2020). Under South Carolina law, to establish a cause of action for negligence, the plaintiff must prove (1) a duty of standard of care existed; (2) defendant breached that duty by a negligent act or omission; and (3) the breach was the actual and proximate cause of the plaintiff's injury. *Greenberg Inv. P'ship, L.P. v. Cary's Lake Homeowners Ass'n*, No. 3:15-cv-05096-JMC, 2016 WL 2766675, at *2 (D.S.C. May 13, 2016).

Koch Defendants argue that they did not breach a standard of care owed to Plaintiffs. (ECF No. 34-1 at 11.) As to the Ventures, Koch Defendants, assert that the standard of care for MNK is limited by its "marginal interest" in the Ventures. (*Id*.) Koch Defendants state that MNK was a "member-of-a-member" and its interests were terminated in 2016 and 2017. (*Id*.) As to the entities where MNK was a direct member or shareholder, Koch Defendants argue that the standard of care is limited by S.C. Code Ann. § 33-44-409(c) (West 2020), which states "[a] member's duty of care to a member-managed company and its other members in the conduct of . . . the company's business is limited to refraining from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law." (*Id*. at 12.)

As to Michelle Koch, Koch Defendants argue that Plaintiffs did not specifically allege any personal misconduct. (ECF No. 34-1 at 12.) They state that the only specific allegations Plaintiffs state is that Michelle Koch acted as the "alter ego" of her husband, and that she oversaw renovations to Johnson's home, in which there were $1.6 million of "questionable transactions."

(*Id*.) Koch Defendants argue that it is noteworthy to address the fact that the renovations and alleged "questionable transactions" occurred in 2011, approximately eight (8) years before Johnson filed the initial Complaint. (*Id*.) Koch Defendants further assert other factual allegations that the court is not inclined to address at the Rule 12(b)(6) stage because they use evidence[6] outside of the Second Amended Complaint. (*Id*. at 12–13.)

Plaintiffs allege that Defendants were members and managers of various LLC's with Plaintiffs. (ECF No. 32 at 3 ¶¶ 17, 22, 4 ¶ 30, 5 ¶ 37, 8 ¶ 64.) Plaintiffs further assert that Defendants owed a duty of "good faith and fair dealing and certain statutory duties to Plaintiffs." (*Id*. at 8 ¶¶ 64, 66). Plaintiffs allege that Defendants siphoned money for themselves and failed to disclose facts to Plaintiffs about the Ventures. (*Id*. at 5 ¶ 37, 7 ¶ 58.) Plaintiffs assert that Johnson was manipulated into believing that Barner and Michelle Koch invested in the Ventures as well. (*Id*.) Plaintiffs further allege, however, this was not the case, and Johnson funded all of the Ventures. (*Id*.) They assert that Defendants took advantage of the relationship with Johnson by encouraging him to transfer money into Chamire, which resulted in Defendants receiving 1/3 of the value every time a transfer was made because Defendants owned 33% respectively. (*Id*. at 7 ¶¶ 54, 57.) Thus, establishing sufficient allegations for a negligence claim.

In examining a claim for negligence, "the court must determine, as a matter of law, whether the defendant owed a duty of care to the plaintiff [and] if there is no duty, the defendant is entitled to judgment as a matter of law." *Huggins v. Citibank, N.A.,* 585 S.E.2d 275, 277 (S.C. 2003) (citation omitted). "An affirmative legal duty exists only if created by statute, contract, relationship, status, property interest, or some other special circumstance." *Hendricks v. Clemson Univ.*, 578 S.E.2d 711, 714 (S.C. 2003). The South Carolina Supreme Court recognizes five

---

[6] Koch Defendants rely on Michelle Koch's Affidavit.

exceptions to this rule: "1) where the defendant has a special relationship to the victim; 2) where the defendant has a special relationship to the injurer; 3) where the defendant voluntarily undertakes a duty; 4) where the defendant negligently or intentionally creates the risk; and 5) where a statute imposes a duty on the defendant." *Id*. at 911–12 (citation omitted).

Here, in the Second Amended Complaint, Plaintiffs allege that Koch Defendants had access to Plaintiffs' bank accounts and used that access to set up funding for the Ventures. (ECF No. 32 at 5 ¶ 38.) As such, Plaintiffs allege that Koch Defendants owed Plaintiffs a duty of care, as "a person of ordinary prudence and reason would exercise under the same circumstances." *Greenberg*, 2016 WL 2766675, at *2. Plaintiffs further assert that Koch Defendants improperly siphoned funds for personal use, failed to disclose material facts relevant to investment decisions, and made improper use of Plaintiffs' monies. (ECF No. 29 at 8 ¶¶ 72–73.) Plaintiffs allege that they have suffered extensive damages as a result of Defendants' breaches. (*Id*.) It is clear that Plaintiffs have alleged the necessary elements, supported by sufficient factual matter, to state a cause of action for negligence. Koch Defendants dispute that the only standard of care owed by MNK, as well as Michelle Koch was created by statutory law. (ECF No. 34-1 at 11–12.) Moreover, Koch Defendants argue that the specific statute (S.C. Code Ann. § 33-44-409(c) (West 2020)) limits their standard of care owed to Plaintiffs. (*Id*.) Such disagreement is a factual one and is not to be considered at this stage in the case. Therefore, the court denies Koch Defendants' Motion to Dismiss the negligence claim.

**5.    Claim for Breach of Fiduciary Duty**

Koch Defendants move to dismiss Plaintiffs' claim against them for breach of fiduciary duty. In South Carolina, a fiduciary relationship is founded on the trust and confidence reposed by one person in the integrity and fidelity of another. *See Big Red Box, LLC v. Square, Inc.*, CA No.

3:18-758-SAL-SVH, 2020 WL 465928, at *6 (D.S.C. Jan. 22, 2020). South Carolina law has reserved imposition of fiduciary duties to business settings, in which one has a special confidence in another so that the latter, in good conscience, is bound to act in good faith and with due regard to the interests of the one imposing the confidence." *Moore v. Moore*, 599 S.E.2d 467, 472 (S.C. App. Ct. 2004). A relationship must be more than casual to equal a fiduciary relationship. *Id.* (citing *Regions Bank v. Schmauch*, 582 S.E.2d 432, 444 (S.C. App. Ct. 2003). To establish the existence of a fiduciary relationship, the facts and circumstances must indicate the party reposing trust in another has some foundation for believing the one so entrusted will not act in his own behalf but in the interest of the party reposing. *Id.* (citing *Burwell v. S.C. Nat'l Bank*, 288 S.E.2d 786, 790 (S.C. App. Ct. 1986).

The evidence must show the entrusted party actually accepted and induced the confidence placed in him. *Ameristone Tile, LLC v. Ceramic Consulting Corp.*, 966 F. Supp. 2d 604 (D.S.C. 2013); *Regions Bank*, 582 S.E.2d at 444. To establish a claim for breach of fiduciary duty, the plaintiff must prove (1) the existence of a fiduciary duty; (2) a breach of that duty owed to the plaintiff by the defendant; and (3) damages proximately resulting from the wrongful conduct of the defendant. *RFT Mgmt. Co. v. Tinsley & Adams, L.L.P.*, 732 S.E.2d 166, 173 (S.C. 2012).

After reviewing Plaintiffs' Second Amended Complaint, it appears that the fiduciary claim is duplicative of their negligence claim. The only difference between the negligence and breach of fiduciary duty claims are the allegations contained in paragraphs 60–66 of the Second Amended Complaint, which discusses the fiduciary relationship. The South Carolina Supreme Court has held that a breach of fiduciary duty claim is "duplicative" when it arises out of the "same factual allegations" as another claim. *See RFT Mgmt.*, 732 S.E.2d at 173. However, "Rule 8 also provides that a party may plead claims in the alternative or may make two or more statements of a claim

either in a single count or separate ones." *F.D.I.C. v. Willetts*, 882 F. Supp. 2d 859, 866 (E.D.N.C. 2012) (citing Fed. R. Civ. P. 8(d)(2)). Accordingly, the court finds no basis at this time to dismiss Plaintiffs' breach of fiduciary duty claim as duplicative of its negligence cause of action.

6. <u>**Claim for Conversion**</u>

Koch Defendants also move to dismiss Plaintiffs' claim for conversion. Under South Carolina law, "conversion is the unauthorized assumption of the right of ownership over goods or personal chattels belonging to another to the exclusion of the owner's rights." *Simmons v. Danhauer & Assocs., LLC*, No. 8:08-cv-03819-JMC, 2010 WL 4238856, at *3 (D.S.C. Oct. 21, 2010), aff'd, 477 F. App'x 53 (4th Cir. 2012) (citing *Moseley v. Oswald*, 656 S.E.2d 380, 382 (2008)). "To establish conversion, the plaintiff must show either title to or right to the possession of the personal property, and the plaintiff must demonstrate that the defendant exercised unauthorized control over the plaintiff's property." *Id*. However, conversion may arise by some illegal use or misuse, or by illegal detention of another's personal property. *Coll. of Charleston Foundation v. Ham*, 585 F. Supp. 2d 737 (D.S.C. 2008). Money may be the subject of conversion when it is capable of being identified and is subject to an obligation to be returned or to be otherwise treated in a particular manner. *SSI Med. Servs., Inc. v. Cox*, 392 S.E.2d 789, 792 (S.C. 1990). Conversely, "if the allegedly converted money is incapable of being described or identified in the same manner as a specific chattel, it is not the proper subject of a conversion action." *Cal Distrib., Inc. v. Cadbury Schweppes Ams. Beverages, Inc.*, No. 06-cv-0496, 2007 WL 54534, at *11 (S.D.N.Y. 2007) (quoting *Interior by Mussa, Ltd. v. Town of Huntington*, 174 Misc. 2d 308, 310 (N.Y. Sup. Ct. 1997)).

Koch Defendants' primary challenge to the conversion claim is that they "were given access to Plaintiffs' financial accounts, and control over the Ventures." (ECF No. 34-1 at 15.)

Koch Defendants argue that Plaintiffs "voluntarily gave [] Defendants legal access to use and distribute money from these accounts." (*Id*.) This deficiency, Koch Defendants argue, requires that the court dismiss the conversion claim. (*Id*.)

With respect to Plaintiffs' conversion claim, the Second Amended Complaint summarizes the allegations as follows:

> Plaintiffs had ownership and a right to possess funds in his accounts. Defendants[] converted funds from Plaintiffs' accounts for their own and improper purposes. Defendants' conversion of Plaintiffs' funds is inconsistent with Plaintiffs' property rights and has caused Plaintiffs to suffer damages. Defendants' conversion was willful, wanton, reckless, and intentional. As such, Plaintiffs are entitled to punitive damages.

(ECF No. 32 at 9 ¶¶ 76–77.) Plaintiffs bring this claim against Koch Defendants, alleging that Koch Defendants converted the money to their own use, and Plaintiffs did not give permission. (*Id*. at 1-10.) In support of their broad allegations, Plaintiffs provide a variety of more specific allegations in their Response in Opposition to Motion to Dismiss (ECF No. 37). Plaintiffs plead that Defendants had access to bank accounts containing Johnson's money, and moved the money to the Ventures. (*Id*. at 5 ¶¶ 38, 39, 40, 7 ¶¶ 52, 53.) Finally, Plaintiffs allege that Defendants improperly siphoned money to themselves, and at least $1.5 million is unaccounted for from their bank accounts. (*Id*. 5 ¶¶ 39, 40, 8 ¶ 67, 9 ¶ 77.) Plaintiffs also allege that Michelle Koch spent over $1.6 million on "questionable transactions" while overseeing the renovation of Johnson's home. (*Id*. at 6 ¶ 43.)

As noted above, Koch Defendants assert that Plaintiffs' conversion claim must be dismissed because "conversion cannot arise from the exercise of a legal right." (ECF No. 34-1.) The relevant question at the Rule 12(b) stage is not whether Plaintiffs gave legal access, but rather the money alleged to have been converted is specifically "identifiable" or, put another way, whether it is *capable* of "being described or identified in the same manner as a specific chattel."

*See 9310 Third Ave. Assocs, Inc. v. Schaffer Food Serv. Co.*, 210 A.D.2d 207, 207 (N.Y. App. Div. 1994) (emphasis added). Plaintiffs must show ownership of the specifically identifiable amount. *Id*.

The purpose of this limitation is to ensure that the tort of conversion—a property tort—is applied only where a plaintiff alleges interference with money in which he has a property interest, as contrasted with a mere right to receive payment. *See High View Fund, L.P. v. Hall*, 27 F. Supp. 2d 420, 429 (S.D.N.Y. 1998); *Selinger Enters., Inc. v. Cassuto*, 50 A.D.3d 766, 767 (N.Y. App. Div. 2008) ("The mere right to payment cannot be the basis for a cause of action alleging conversion; the essence of such a cause of action is the 'unauthorized dominion over the thing in question.'" (quoting *Fiorenti v. Cent. Emergency Physicians*, 305 A.D.2d 453, 454 (N.Y. App. Div. 2003)). To determine whether the money was converted, courts look to see if it was in a segregated fund of some sort. *See, e.g.*, *Mfrs. Hanover Tr. Co. v. Chem. Bank*, 160 A.D.2d 113, 124 (N.Y. App. Div. 1990). This court finds the aforementioned case law persuasive and applicable under these circumstances.

Here, Plaintiffs allege that Defendants siphoned money from Johnson's bank accounts. (ECF No. 32 at 9.) Drawing an inference in favor of Plaintiffs, as it must, the court finds that this allegation is sufficiently segregated to make the allegedly converted funds "specifically identifiable." The identification of the definite and specific sum of money can be accomplished through discovery. The Koch Defendants' argument that there can be no conversion because Plaintiffs gave them control and permission of bank accounts fails as a matter of law. *See Sperrazza v. Kail*, 267 A.D.2d 692, 693 (N.Y. App. Div. 1999) (holding that contents of joint bank accounts, which had been withdrawn in their entirety by one of the cotenants without consent of the other cotenant, were "sufficiently identifiable to be the subject of a claim for conversion"; *see also*

*Brennan's Bus Serv., Inc. v. Brennan*, 107 A.D.2d 858 (N.Y. App. Div. 1985) (affirming conversion judgment in favor of plaintiff where defendant withdrew corporate funds invested in certificates of deposit and spent it for noncorporate purposes). Plaintiffs have sufficiently alleged that Defendants converted to their own use or benefit certain funds belonging to Plaintiffs without Plaintiffs' permission. *See May v. Peninger*, No. 2:07-cv-00864-CWH, 2008 WL 509470, at *12 (D.S.C. Feb. 22, 2008) (denying motion to dismiss conversion claim; *Hall v. Storm Team Constr. Inc.*, 6:18-cv-00753-AMQ, 2018 WL 2461991, at *5 (D.S.C. June 1, 2018) (same). Therefore, the court denies Koch Defendants' Motion to Dismiss as to Plaintiffs' claim for conversion.

7.    **FINRA Agreement**

Koch Defendants asserts that the claims against them must be dismissed in favor of the Financial Industry Regulatory Authority's ("FINRA") arbitration. However, Plaintiffs argue that Defendants are not parties to the arbitration provision. (ECF No. 37 at 23.) In particular, Koch Defendants relied on FINRA Rule 12209 ("Legal Proceedings") which states as follows:

> During an arbitration, no party may bring any suit, legal action, or proceeding against any other party that concerns or that would resolve any of the matters raised in the arbitration.

(ECF No. 34-1 at 15.) Koch Defendants assert that Johnson filed a FINRA suit against Paul Koch in Minnesota pursuing almost the "same claims as in this lawsuit." (*Id.*) In this regard, Koch Defendants note that the FINRA's arbitration rules are adequate to protect securities customers such as Plaintiffs and the present claim is barred by the rules. (*Id.*)

However, Plaintiffs contend that this argument should fail because Paul Koch is not a party in this present case. (ECF No. 37 at 23.) They further assert that they could not bring claims against Michelle Koch or MNK due to FINRA rules. (*Id.*) The FINRA only has "authority to exercise comprehensive oversight over 'all securities firms that do business with the public.'" (*Id.*)

Defendants contend that the FINRA arbitration has a preclusive effect on the present action. FINRA arbitration rules generally require the arbitration of disputes between participants in the securities industry. Upon review, the court concludes that this dispute is not subject to mandatory arbitration. Specifically, the court finds that Koch Defendants are not parties to any independent arbitration agreement with either Johnson or RWH. Moreover, Koch Defendants are not subject to FINRA's mandatory arbitration rules.[7] It is undisputed that Koch Defendants are not FINRA members. Plaintiffs allege that Koch Defendants were "alter egos" of Paul Koch (*see* ECF No. 32 at 6 ¶ 49), which seemingly would make them "associated person[s] of a member" and, thus, subject to FINRA arbitration Rule 13200(a). However, Plaintiffs maintain that the FINRA arbitration rule does not bar their challenge to these specific appropriations because the allegations arise from different parties and situations because Koch Defendants are not "customers," "members" or "associated person[s] of a member." (ECF No. 37 at 24) (citing FINRA Rule 12000); see *UBS Financial Services, Inc. v. Carillion Clinic*, 706 F.3d 319 (4th Cir. 2013) (discussing FINRA and rejecting FINRA arbitration for claim by Plaintiff who was not a "customer")

Upon the court's review, for Plaintiffs to bring their claims against Koch Defendants under the FINRA, Koch Defendants would need to be a member of the FINRA. The allegations in the pleadings do not allege such membership. *See* FINRA Rule 12200: *FINRA Arbitration Under an Agreement*. Thus, the court denies Koch Defendants' Motion to Dismiss on this claim based on the FINRA.

---

[7] FINRA Rule 13200(a) provides that "[e]xcept as otherwise provided in the Code, a dispute must be arbitrated under the Code if the dispute arises out of the business activities of a member or an associated person *and* is between or among: Members; Members and Associated Persons; or Associated Persons."

## V.    CONCLUSION

After a thorough review of the record, the court **DENIES** the Motion to Dismiss (ECF No.

34) of Defendants MNK Holdings, LLC and Michelle Koch.

**IT IS SO ORDERED.**


*J. Michelle Childs*
United States District Judge


August 5, 2020
Columbia, South Carolina